Peter A. Javanmardi (State Bar No. 258449)
peter@javanmardilaw.com
Marc A. Holmquist (State Bar No. 258406)
marc@holmquistlaw.com
Miranda A. Mossavar (State Bar No. 279251)
miranda@mossavarlaw.com
JAVANMARDI LAW, PC | HOLMQUIST LAW, PC
1875 Century Park East, Suite 1025
Los Angeles, CA 90067
Telephone:   (424) 286-4240
Facsimile:    (310) 564-0347

Attorneys for Plaintiff SARA AHERN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| SARA AHERN,<br><br>                Plaintiff,<br><br>        v.<br><br>FISERV, INC.; FISERV SOLUTIONS, LLC; and DOES 1 through 10, Inclusive,<br><br>                Defendants. | Case Number: 2:23-cv-07753-WLH (SKx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION**<br><br>[Filed Concurrently with (i) Declaration of Sara Ahern; (ii) Declaration of Peter Javanmardi.]<br><br>**Date: Friday, October 27, 2023<br>Time: 1:30 p.m.<br>Courtroom: 9B**<br><br>**Judge: Hon. Wesley L. Hsu**<br><br>**Trial Date: None Set<br>Action Filed: August 16, 2023<br>Action Removed: September 15, 2023** |

# Table of Contents

I.      INTRODUCTION ...................................................................................5

II.     STATEMENT OF FACTS ......................................................................6

III.    LEGAL ARGUMENT .............................................................................7

     A.      Legal Standard Governing Motions to Compel Arbitration. ............................7

     B.      Fiserv's Arbitration Agreement Does Not Satisfy *Cole/Armendariz*. ..............8

     C.      Fiserv's Arbitration Agreement is Permeated with Both Procedural and Substantive Unconscionability .................................................9

         1.      *Fiserv's Arbitration Agreement is Procedurally Unconscionable Because it is an Oppressive Contract of Adhesion, and Because Plaintiff Was Never Provided the Applicable Rules.* ...........................10

         2.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Lacks Mutuality.* ...............................11

         3.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Imposes Drastic Limits on Plaintiff's Prehearing Discovery.* ..........................14

         4.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Requires Employees to Provide Fiserv a "Free Peek" at the Claims Before Arbitration.* ...............17

         5.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Requires Plaintiff to Share the Cost of Arbitration.* ...........18

         6.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Imposes Conditions of Confidentiality on Plaintiff.* ...........19

         7.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Impermissibly Alters FEHA's Fee Shifting Provisions.* .....20

         8.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Does Not Allow for Judicial Review.* ..................21

         9.      *Fiserv's Arbitration Agreement is Substantively Unconscionable Based on its Multiple Blank Lines on Material Issues.* .......................22

         10.     *The Agreement's Unconscionable Terms Cannot Be Severed.* ...........23

     D.      The Alleged Delegation Clause Does Not Apply. ............................................24

IV.     CONCLUSION ....................................................................................26

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## Cases

*A&M Produce Co. v. FMC Cop*., (1982) 135 Cal.App.3d 473, 486, 491 .......................................... 9

*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771 ....................................................... 24

*Armendariz v. Foundation Health Psychcare Serv's Inc.* (2000) 24 Cal 4th 83, 114-121 ....... 9, 11, 23

*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893-894 .................................. 25

*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 727 ............................... 14, 15

*Carmona v. Lincoln Millennium Car Wash, Inc*., (2014) 226 Cal.App. 4th 74, 85 .................... 10, 11

*Circuit City Stores, Inc. v. Mantor* (2003) 335 F3d 1101, 1106 .................................................. 9

*Cole v. Burns International Sec. Services* (D.C. Cir. 1997) 105 F.3d 1465 ............................. 5, 8, 18

*Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1075 .......................................... 8, 14

*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209-210 ....................................... 25

*Doctor's Assocs., Inc. v. Casarotto* (1996) 517 U.S. 681, 687 ...................................................... 8

*First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938 (1995) .................................................... 24

*Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 726 ..................................... 10

*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 717 ........................................................... 14, 15

*Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1170. ..................................... 7, 8

*Little v. Auto Siegler* (2003) 29 Cal.4th 1064, 1071 ................................................................. 9

*Martinez v. Master Protection Corp.*  (2004) 118 Cal. App. 4th 107, 114) ..................................... 10

*McKinney v. Bonilla* (S.D. Cal., 2010) 2010 WL 2817179 ........................................................ 17

*Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 32 ................................................................. 21

*Murphy v. Check 'N Go of California, Inc.* 156 Cal.App.4th 138 (2007) ........................................ 25

*Nyulassy v. Lockheed Martin Corp*., (2004) 120 Cal. App. 4th 1267, 1283 ..................................... 17

*Ontiveros v. DHL Express (USA), Inc.* 164 Cal.App.4th 494 (2008) ............................................. 25

*Parada v. Superior Court* (2009), 176 Cal.App.4th 1554, 1566 ................................................... 25

*Ramirez v. Charter Commc'ns, Inc.* (2022) 75 Cal.App.5th 365 ................................................. 15

*Ramos v. Superior Court* (2018) 28 Cal. App. 5th 1042 ........................................................... 19

*Rent-A-Center, West, inc. v. Jackson*  561 U.S.63, fn. 1 (2010) .................................................. 24

3

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

*Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138 ........................................................ 11

*Sonic-Calabasas A, Inc. v Moreno* (2013) 57 Cal. 4th 1109, 1148 .................................................. 9

*Sparks v. Vista Del Mar,* (2012) 207 Cal.App.4th 1511, 1523 ......................................................... 20

*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519 ..................................................................... 11

*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 392-393 .................................... 20

*Wherry v. Award, Inc*. (2011) 192 Cal. App. 4th 1242, 1246-1247 .................................................. 9

*Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97, 115 ................................. 20

**<u>Statutes</u>**

9 U.S.C § 3 ......................................................................................................................................... 26

9 U.S.C. § 2 .......................................................................................................................................... 7

Cal. Code Civ. Proc. §1032 ................................................................................................................. 21

Cal. Code Civ. Proc. §1281.4 ............................................................................................................. 26

Cal. Com. Code § 2302 ......................................................................................................................... 9

Cal. Gov. §12965(b) ........................................................................................................................... 21

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants Fiserv, Inc. and Fiserv Solutions, LLC (collectively "Fiserv"), a publicly traded company with hundreds of thousands of employees around the country, attempt to enforce one of the most unconscionable agreements this Court has seen. Allegedly entered in 2002, the alleged arbitration contract here fails almost entirely to comply with the requirements set forth in *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, decided two years before the contract was entered, or *Cole v. Burns International Sec. Services* (D.C. Cir. 1997) 105 F.3d 1465, effectively *Armendariz's* federal equivalent, decided five years prior.

Fiserv's adhesive agreement ignored the many protections afforded to employees in a FEHA case involving forced arbitration. It also, separately, was unconscionable in several respects. Fiserv has attempted to create a non-mutual system where it could force its employees into arbitration on cases they bring against Fiserv, while simultaneously not binding itself to arbitrate claims against its employees. Fiserv has severely restricted the discovery to which Plaintiff is entitled (making it near impossible for an employee to prove a discrimination claim), has precluded judicial review of an arbitration award, has required Plaintiff to contribute to the cost of arbitration, has removed an employee's ability to recover attorneys' fees and costs even in this FEHA case and even if Plaintiff prevails, has required employees to provide Fiserv a "free peak" at claims and to jump over other hurdles before arbitration can be initiated, has imposed confidentiality requirements on employees that burden the ability to investigate and prove claims, and has left several blanks spots in the agreement (all on material issues, such as the governing law) rendering the agreement critically vague and uncertain.

Defendants unquestionably engaged in a systematic effort to impose unfairly one-sided agreements on their employees so that they would have the upper hand when

an employee attempts to bring an employment-related claim. The purported agreement cannot be saved with severance, as there are so many offending provisions as well as several issues (such as lack of mutuality) that cannot be remedied with severance. The Court should simply deny the motion.

## II.  <u>STATEMENT OF FACTS</u>

Plaintiff Sara Ahern ("Plaintiff") was a loyal long-term employee of Defendants for 20 years before she was suddenly terminated at the age of 67 shortly after she disclosed disabilities. Plaintiff was hired in March 2002 as Vice President-Conversions in Los Angeles. Plaintiff's final job title was Manager, Implementations. Upon hire, she was required as a condition of employment to sign various documents including one requiring her to arbitrate claims against Fiserv (but not the reverse); indeed, a separate Restricted Stock Unit Agreement also separately confirmed that Fiserv could sue employees in court, not arbitration. She did not receive a copy of the agreement or the governing rules. In or around 2020/2021, Plaintiff started seeing many of her older colleagues get terminated or pushed into retirement. Indeed, management would often refer to the terminations as retirements even though the employees did not voluntarily retire. (Ahern Decl. ¶ 2-8; Ex. 1.)

In 2022, Plaintiff started having serious medical issues. Specifically, on or about March 31, 2022, Plaintiff went to urgent care because of medical complications she was having. Plaintiff remained at the hospital for several hours and was released with restriction – she was told to work less hours and monitor her blood pressure in the months that followed. and took time off. She returned and told management that she needed some accommodations including some modifications to her schedule for the foreseeable future. Plaintiff's employment was then suddenly terminated in June 2022. (Ahern Decl. ¶ 8-10.)

The termination didn't make any sense to Plaintiff because her position was needed and many others with her similar title were retained. Plaintiff communicated with HR and asked specifically to be placed into another position in lieu of termination.

Plaintiff was practically ignored even though she identified other positions she could do, even if she was required to relocated. When Plaintiff was ignored, in December 2022, she actually went and Plaintiff even applied for another job – she was denied without any good explanation. (Ahern Decl. ¶ 8-10.) The lawsuit was filed on August 16, 2023.

Shortly after serving the lawsuit Defendants attorneys requested that the case be submitted to arbitration. On September 14, 2023, Plaintiff's attorney responded by asking questions about the arbitration agreement and other documents Plaintiff may have signed. Days later, Defendants' counsel promised to produce certain responsive documents. Instead of producing the promised documents, Defendants' counsel reached out again on September 22, 2023, indicating that their deadline to file the motion was that day, and asked for a Zoom videoconference that same day. The motion was filed that day. (Javanmardi Decl. ¶ 2-4.)

Defendants eventually produced some, but not all of the responsive documents and despite requests from Plaintiff's counsel, they refused to provide anything more. (Javanmardi Decl. ¶ 5-6.).  As discussed in more detail below, the Court should deny the enforcement of this illegal agreement in full.

## III.   LEGAL ARGUMENT

### A. Legal Standard Governing Motions to Compel Arbitration.

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or equity for the revocation of any contract." (9 U.S.C. §2.) While the FAA supports a strong congressional policy favoring arbitration, arbitration remains a matter of contract" and the district court is not bound by the policy encouraging arbitration, but rather by ordinary principles of contract law; the Court must "place arbitration agreements on equal footing with other contracts." (*Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1170.) Accordingly, arbitration agreements "are subject to all defenses to enforcement that apply to contracts generally." (*Ibid*.)

"[A]n arbitration agreement may not function [] to require employees to waive potential recovery for substantive statutory rights in an arbitral forum, especially for statutory rights established 'for a public reason.'" (*Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1075, quoting *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 28 and citing *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 100.)

Thus, to be enforceable, an agreement to arbitrate claims based on statutory rights must meet minimum requirements first articulated in *Cole v. Burns International Sec. Services* (D.C. Cir. 1997) 105 F.3d 1465, and in California, in *Armendariz, supra,* 24 Cal.4th 83.) Specifically, they must: (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4) provide for all types of relief that would otherwise be available in court, and (5) not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. (*Cole, supra*, 105 F.3d at 1482; *see also Armendariz, supra*, 24 Cal.4th at p. 102.)

Even further, "generally applicable defenses, such as … unconscionability, may be applied to invalidate arbitration agreements" between employers and employees. (*Doctor's Assocs., Inc. v. Casarotto* (1996) 517 U.S. 681, 687.) Because Plaintiff was employed in California, the court must apply California law to determine whether the arbitration agreement is unconscionable. (*See Ingle, supra*, 328 F.3d at p. 1170e.)

In sum, the Court can find the purported arbitration agreement is not enforceable if it finds that the agreement fails to provide for any of the five requirements set forth in *Cole/Armendariz, or* if it is otherwise unconscionable. As below, the agreement here fails on four out of five of the *Cole/Armendariz* factors. It is also separately unconscionable, both procedurally and substantively, to a higher degree in several other respects.

## B.    Fiserv's Arbitration Agreement Does Not Satisfy Cole/Armendariz.

To be enforceable in a case alleging public rights (like this one, under California's

FEHA), an arbitration agreement must satisfy the factors enumerated in *Cole* and *Armendariz.* Here, the purported agreement fails in at least four of the five respects: (i) it does not provide for more than minimal discovery; (ii) while it provides for a written award, it does not allow for judicial review; (iii) it does not provide for all types of relief available; specifically, it does not allow Plaintiff to recover attorneys' fees or costs if she prevails; and (iv) it requires Plaintiff to pay unreasonable costs of arbitration as a condition of access to arbitration.

We address each of these four failures more below, in the context of substantive unconscionability, but we ask this Court to find as a threshold matter that the agreement's failure on four out of five of the key factors of *Cole/Armendariz* is itself enough to warrant denial of the motion.

## C.   Fiserv's Arbitration Agreement is Permeated with Both Procedural and Substantive Unconscionability.

The unconscionability doctrine is concerned with whether the agreement is unreasonably favorable to one party, considering in context "its commercial setting, purpose, and effect." (*Sonic-Calabasas A, Inc. v Moreno* (2013) 57 Cal. 4th 1109, 1148). Unconscionable arbitration agreements are not enforceable. (*Armendariz, supra,* 24 Cal 4th 83 at p. 114-121). To be voided on grounds of unconscionability, the agreement must be both procedurally and substantively unconscionable. (*Id*. at 114.) Although both elements are required to find an agreement unenforceable, they need not be present in the same degree . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa. (*Id*.)

The procedural element of unconscionability focuses on two factors:  oppression or surprise. (Cal. Com. Code § 2302.) One or the other is sufficient, and both need not be present. (*A&M Produce Co. v. FMC Cop*., (1982) 135 Cal.App.3d 473, 486, 491). "Oppression" arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . Characteristically, the form contract is drafted by the party with the superior bargaining position."  (*Id*. at p. 486).

Oppression exists when a party has no meaningful opportunity to negotiate terms or the contract is presented to them on a take it or leave it basis." (*Wherry v. Award, Inc*. (2011) 192 Cal. App. 4th 1242, 1246-1247). A "meaningful opportunity" to negotiate the terms of a contract requires, at a minimum, that a party have "reasonable notice of his opportunity to negotiate or reject the terms of a contract, and an actual meaningful and reasonable choice to exercise that discretion." (*Circuit City Stores, Inc. v. Mantor* (2003) 335 F.3d 1101, 1106.)

"Substantively unconscionable terms may take various forms but may generally be described as unfairly one-sided." (*Little v. Auto Siegler* (2003) 29 Cal.4th 1064, 1071). "Public policy favoring arbitration is 'manifestly undermined by provisions in arbitration clauses which seek to make the arbitration process itself an offensive weapon in one party's arsenal." (*Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 726) "Given the lack of choice and potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Carmona v. Lincoln Millennium Car Wash, Inc*., (2014) 226 Cal.App.4th 74, 85).

### 1. Fiserv's Arbitration Agreement is Procedurally Unconscionable Because it is an Oppressive Contract of Adhesion, and Because Plaintiff Was Never Provided the Applicable Rules.

As above, "an arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." (*Martinez v. Master Protection Corp*. (2004) 118 Cal. App. 4th 107, 114). Here, the arbitration agreement was oppressive because it was adhesive; it was presented to Plaintiff on a "take it or leave it" basis as a condition of employment, and Plaintiff had no meaningful opportunity to negotiate the terms. While the arbitration agreement itself purports to be "voluntary" (*see* Decl. of Stuz, Ex. A, Doc. 13-3, para. 20), it contains no indication that its terms were negotiable, nor that Plaintiff could keep her job if she refused to

agree to arbitrate. In fact, in Plaintiff's March 19, 2002 offer letter (*see* Decl. of Stuz, Ex. B, Doc. 13-4), Fiserv made clear to Plaintiff: "Your employment is contingent upon completion of all pre-employment processes: … Completed and signed "Mutual Agreement to Arbitrate" form." Thus, the arbitration agreement was adhesive, oppressive, and therefore procedurally unconscionable to a significant degree.

Another factor weighing in favor of procedural unconscionability is that Plaintiff was not provided with the rules governing any potential arbitration. In this regard, the agreement states: "Any arbitration hereunder shall be conducted under the Model Employment Procedures of the American Arbitration Association ("AAA"), as modified herein." (*see* Decl. of Stuz, Ex. A, Doc. 13-3, para. 7.) The rules are not attached. Even worse, the purported agreement does not even inform Plaintiff of where she could find the rules governing the arbitration. Courts routinely find procedural unconscionability on this basis. (*See Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138).

The lack of rules combined with the oppressiveness of the adhesive contract results in a high degree of procedural unconscionability, and Plaintiff therefore need not prove as much substantive unconscionability. (*See Armendariz, supra*, 24 Cal. 4th 83 at 114.). But here the purported agreement is about as substantively unconscionable as a California arbitration agreement can be, including that it fails to meet four of five of the key requirements in *Cole/Armendariz*, and because it is unconscionable in several other respects (perhaps most notably, its utter lack of mutuality).

### 2. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Lacks Mutuality.

The Substantive unconscionability here is *egregious*. If ever there was an arbitration agreement being used offensively by an employer to disadvantage unsuspecting employees, it is this one.

California courts assign "paramount" consideration to "mutuality" in assessing substantive unconscionability. (*See Armendariz*, *supra*, 24 Cal.4th at 117-120); *Stirlen*

11

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

*v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1528-1529; *Carmona, supra*, 226 Cal.App.4th at 85-86).  In *Armendariz, supra*, 24 Cal.4th at pp. 117-120, the California Supreme Court held that an arbitration provision requiring the employee to arbitrate wrongful termination claims but allowing the employer to bring a civil action for other claims, such as trade secret violations, was substantively unconscionable. "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz, supra*, 24 Cal.4th at p. 120).

Importantly, mutuality in this context does not just mean that both sides agree to arbitrate whatever claims are agreed to be part of the agreement's scope; rather, it means that both sides agree to arbitrate all their respective claims against the other. Here, the agreement purports to be mutual, both in its title and in its description that "Each party's promise to resolve claims by arbitration in accordance with the provisions of this Agreement, rather than through the courts, is consideration for the other party's like promise." (*see* Decl. of Stuz, Ex. A, Doc. 13-2, intro. Paragraph.) But this language says nothing of Defendants arbitrating claims they may have against the Plaintiff. On the contrary, the scope of the agreement is limited to claims that an employee would bring against the employer. So, while Defendants were "mutually" agreeing that Plaintiff had to bring her claims in arbitration, there is no reciprocal requirement for Defendants to bring their claims against employees in arbitration, meaning the agreement is not mutual.

In paragraph one, "Scope of Arbitration," it is made clear that only claims the employee might bring against the employer are subject to arbitration:

> The parties agree to submit to arbitration any and all disputes arising from or related to certain compensation matters and claims of sexual harassment during the employment relationship,

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

or the termination of employment between the parties for which

a court otherwise would be authorized to grant relief.

The paragraph goes on and expounds on this somewhat, but only to further confirm that it is ***employee claims*** that are subject to arbitration. The agreement lists these types of claims as included in the scope of the agreement:

1. Amounts of compensation owed and due;

2. Claims concerning sexual harassment;

3. Termination claims concerning breach of any contract or covenant, express or implied, relating to employment, benefits, or compensation;

4. Tort claims;

5. Discrimination claims, including but not limited to race, sex, religion, national origin, age, marital status, handicap, disability or medical condition; and

6. Claims for violation of any federal, state, or other governmental constitution, statute, ordinance or regulation.

(*See* Decl. of Stuz, Ex. A, Doc. 13-3, para. 1.)

All of these claims are ones that an employee might bring against an employer. The most typical claims brought by an employer involve protection of the employer's trade secrets or other confidential information, and claims for unfair competition. Those claims are conspicuously absent from the scope of this agreement. In fact, Defendants go one step further and specifically carve out those claims from arbitration: "This Mutual Agreement to Arbitrate Claims does <u>not</u> apply to or cover claims for: … claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use or unauthorized disclosure of trade secrets or confidential information." (*see* Decl. of Stuz, Ex. A, Doc. 13-3, para. 1.)

Even further, in the parties "Restricted Stock Unit Agreement," Defendants make clear they can sue Plaintiff ***in court*** for unfair competition and trade secret violations:

13

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

> You understand that if you are found to have wrongfully misappropriated a trade secret, you may be liable to the Company for, among other things, exemplary damages and attorneys' fees."

(Ahern Decl., para. 7, Ex. 1 [RSUA Agreement], para. 4(b)(iii).)

It goes on:

> The Company may institute and prosecute proceedings ***in any Court of competent jurisdiction*** either in law or equity to obtain damages for any such breach of this Section 4 or Section 5(b)(iii), or to enjoin you from performing services in breach of Section 4. You hereby agree to ***submit to the jurisdiction of any Court of competent jurisdiction*** in any disputes that arise under this Agreement.

(Ahern Decl., para. 7, Ex. 1 [RSUA Agreement], para. 4(d)(emphases added).)

The practical result of the agreement's defined scope, and the explicit carve out of Defendants' possible claims against Plaintiff (both in the agreement itself and the accompanying RSUA document) is that all employee claims against Defendants are relegated to arbitration, where Defendants' claims against its employees can be brought in court. This lack of mutuality alone, in the context of an adhesive contract, justifies denial of the motion.

### 3. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Imposes Drastic Limits on Plaintiff's Prehearing Discovery.

Paragraph 10 of the agreement provides: "Each party shall be entitled to production of requested documents under the same standards used by the Federal Courts, exchange of witness lists and summaries of the testimony of proposed witnesses, the assistance of one expert witness, and examination by deposition of up to three potential witnesses." California law makes clear these limits on Plaintiff's

14

discovery rights are unconscionable.

In essence, the agreement allows Plaintiff to obtain fact discovery by way of only Requests for Production and up to three depositions—no other written discovery or other discovery mechanisms of any kind, and no further depositions. Such limits (and even similar less restrictive limits) have been found by multiple California courts to be unenforceable. (*See Armendariz, supra,* 24 Cal.4th at p. 104-114; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 911-914 [two depositions; no written discovery; "sufficient cause" standard for arbitrator to award more discovery]; *see also*, *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 717;  *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 727.)

"The denial of adequate discovery in arbitration proceedings leads to the *de facto* frustration of the employee's statutory rights." (*Armendariz*, supra, 24 Cal.4th at p. 104.) Adequate discovery is indispensable for the vindication of the FEHA claims. (*Id*.) "Given the complexity of employment disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case." (*Fitz, supra,* 118 Cal.App.4th at p. 717.)

The lack of discovery does not burden the parties equally, as employers have in their possession most of the relevant documents and control most of the relevant witnesses. (*Baxter*, *supra*, 16 Cal.App.5th at p. 727.) Seemingly neutral limitations on discovery in FEHA matters may therefore be nonmutual in effect.

In *Ramirez v. Charter Commc'ns, Inc.* (2022) 75 Cal.App.5th 365, the Court held that a limit of **four depositions** was unconscionable because the plaintiff would be deprived of the opportunity to prepare her case. (*Id*. at 386) And here Fiserv restricts it to just three, while also preventing all other discovery mechanisms besides requests for production. In each case cited above (*Davis, Fitz,* and *Baxter*) the courts found discovery limits much like those here rendered the agreements in question

unconscionable.

Further, the agreement here does not allow the arbitrator to expand on the discovery allowed. Defendants' moving papers suggest that the AAA rules bail them out from the discovery limits, by allowing the arbitrator to control the discovery process. This is only true, however, where the agreement being enforced makes clear that the AAA rules will govern in this regard; in other words, this is not true where the agreement and its discovery limits ultimately control over the AAA rules. (*Davis, supra,* 53 Cal.App.5th at p. 939 ["[R]ather than adopting AAA discovery procedures, [defendant's] arbitration agreement provides instead for default discovery that makes no mention of written discovery or document production…].)

Similarly, here, the agreement makes clear that AAA rules apply only to the extent not modified by the arbitration agreement itself: "Any arbitration hereunder shall be conducted under the Model Employment Procedures of the American Arbitration Association ("AAA"), *as modified herein*." (*see* Decl. of Stuz, Ex. A, Doc. 13-2, para. 7 [Emphasis added].) The agreement "modifies" the AAA rules by providing specific discovery limitations, with no provision for the arbitrator to allow anything further. Thus, an arbitrator applying the agreement will be constrained by the limits.

Plaintiff will need much more than three depositions in this case. While it is early and we are not yet privy to the number of Fiserv witnesses who were involved in or knowledgeable about Plaintiff's termination, we know that the termination was purportedly part of a reduction in force where several decision-makers were likely involved, both at a high level (whether and how to conduct the reduction in the first place) and a more micro level (local managers deciding who to include from particular work units, e.g.). As the cases above note, employment cases are factually complex and their outcomes dependent on testimony of multiple percipient witnesses. Plaintiff will require potentially multiple person-most-knowledgeable depositions on a variety of topics. Further, Plaintiff inquired about other job opportunities in lieu of termination, and was summarily rejected, making relevant all other available jobs and Fiserv's

decision-making about not offering Plaintiff any of those jobs. (Javanmardi Decl. ¶¶ 7-8.)

Finally, the arbitrary limit to one expert witness cannot stand. In employment cases, parties frequently require multiple expert witnesses. For starters, there will likely be expert testimony from an economist, if only to opine regarding present value of money, but also likely other calculations regarding lost wages and tax implications. Plaintiff will also likely designate an expert psychologist or psychiatrist, to opine regarding Plaintiff's mental and emotional damages. Other experts frequently seen in employment matters include vocational rehabilitation experts and experts on human resources practices. (Javanmardi Decl. ¶¶ 7-8.) An employer arbitrarily limiting an employee to only one expert at arbitration is a gross limit on the employee's right to prove her claim. It is yet another way Fiserv attempts to disadvantage its employees.

### 4. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Requires Employees to Provide Fiserv a "Free Peek" at the Claims Before Arbitration.

Defendant's Arbitration Documents are substantively unconscionable because they require Plaintiff to "first attempt to resolve the matter informally through a meeting with the local human resources manager and business unit president" before she initiates arbitration. (*see* Decl. of Stuz, Ex. A, Doc. 13-2, para. 8.) This provision is problematic for multiple reasons.

First, requiring Plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that Fiserv would receive a "free peek" at Plaintiff's case, thereby obtaining an advantage when Plaintiff later demands arbitration." (*Nyulassy v. Lockheed Martin Corp.*, (2004) 120 Cal. App. 4th 1267, 1283). The dangers of allowing an employer to enjoy a "free peek" at an employee's case were elaborated on in *McKinney v. Bonilla* (S.D. Cal., 2010) 2010 WL 2817179. In *McKinney*, the defendant's internal dispute resolution policy theoretically applied to both parties. However, the court noted: [I]t is difficult to see how the internal

dispute resolution mechanisms could apply to claims raised by Defendant. Requiring Defendant to seek the approval of its senior management and president...imposes no burden on Defendant while requiring Plaintiff to reveal the details of his case prior to reaching a neutral mediator [does]. (*Ibid.*)  And here, the agreement is not mutual in the first place, so Defendants' claims would not even be subject to arbitration. Only Plaintiff is burdened and disadvantaged by the "free peak" procedure.

*McKinney* discusses another consideration—that the agreement provided a *series of hurdles* to be cleared so that *only the most persistent* employees will ever reach a decision maker outside of the company." (*Ibid.*, emphasis added.) Here, the agreement requires a meeting with a local human resources manager and the business unit president, and for sexual harassment claims also requires the employee to "permit the matter to be fully investigated…before the above-referenced meeting…" This requirement forces an employee to show her cards (without the benefit of seeing Fiserv's counter-arguments) and forces an employee to go through multiple hurdles to even have the chance to initiate arbitration. This unconscionable provision is just another means of tipping the playing field in Fiserv's favor and against its employees.

### 5. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Requires Plaintiff to Share the Cost of Arbitration.

The agreement requires the employee to "contribute half of the appropriate administrative fee" for the arbitration. This cost "unique to arbitration" is to be borne by the employer. (*Cole, supra*, 105 F.3d at 1482; *Armendariz, supra*, 24 Cal.4th at p. 102.) Fiserv again attempts to tip the scales in its favor, discourage employees from pursuing claims against it, and violate California law in the process. Worse, even beyond the administrative fee, Fiserv requires employees to share in the ***entire cost of the arbitrator***. Paragraph 15 of the agreement explains:

> Each party shall be responsive for its own costs incurred
> preparing for and participating in arbitration. The costs and fees
> of the arbitrator, the record, and of the AAA shall be shared by

18

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

> the parties, with the employee's share not to exceed an amount
> greater than a sum equal to one week's wages.

(*see* Decl. of Stuz, Ex. A, Doc. 13-2, para. 15.)

California law does not allow Fiserv to put a price on the employee's contribution to arbitration. The employer must pay all costs unique to arbitration, and requiring an employee to pay a week's worth of wages is an unconscionable impediment to many employees pursuing claims in the first place. While we suspect Fiserv may now argue that it does not intend to enforce this provision, so "no harm no foul," the Court should not be so lenient. As with many of the other provisions at issue here, this provision has a chilling effect, and the agreement must be evaluated at the time it was entered not based on some later concessions by the employer.

### 6. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Imposes Conditions of Confidentiality on Plaintiff.

Paragraph 14 of the agreement provides: "The arbitration proceedings shall be confidential." It provides very limited exceptions for disclosures, for example during a judicial proceeding and to expert witnesses. It also requires the party making a permitted disclosure to "give the other party reasonable written notice of the intended disclosure…" In turn, the confidentiality provision prevents Plaintiff from discussing her allegations and the nature of the claims, which hinders her ability to conduct informal discovery (for example, she would be forced to conduct formal depositions in lieu of informally contacting witnesses to discuss the case). Even, assuming *arguendo*, such communications were permitted under the agreement, an employee would need to first disclose to Fiserv her intent to communicate with various witnesses or other third parties, which invokes a number of concerns including attorney work product.

Broad confidentiality clauses similar to this one have been found substantively unconscionable because they severely restrict an employee's ability to gather evidence and present her case. (*See Ramos v. Superior Court* (2018) 28 Cal. App. 5th 1042, 1065.) The Ramos Court, citing to the Washington Supreme Court in a case called *Zuver*

*v. Airtouch Communications, Inc*., noted the serious problems that a confidentiality clause in arbitration agreements imposes on an employee bringing employment law claims – namely that it hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim." (*Ramos, supra,* at p. 1066.)

The concerns raised by the *Ramos* court are equally applicable to the confidentiality clause at issue here. Indeed this clause is problematic because it is unquestionably one-sided. Plaintiff gains virtually nothing from keeping the arbitration findings or proceedings a secret while Defendants benefit tremendously.

Lastly, the Confidentiality provision is directly at odds with the recently enacted H.R. 4445, "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the "Act")". The text of the Act specifically reflects that it applies to (1) sexual assault disputes ***involving*** a nonconsensual sexual act or sexual contact . . . . and (2) sexual harassment disputes ***relating to*** conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law. (*Id*.) The scope of this agreement includes sexual harassment claims explicitly, and thus Fiserv's confidentiality provision intends to keep those allegations confidential in violation of California law. While Plaintiff's claims here do not include sexual harassment, the Court should still be greatly concerned over the chilling effect of these various illegal provisions for employees generally, and the totality of the illegal provisions demonstrating an employer seeking to disadvantage its employees.

### 7. Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Impermissibly Alters FEHA's Fee Shifting Provisions.

"[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." (*Armendariz*, *supra*, 24 Cal.4th at 101.) In *Trivedi*, the Court found that a clause which allowed the "prevailing party" to recover

20

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

attorneys' fees was substantively unconscionable. (*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393-395) (*disapproved on other grounds*). The Court stated that the provision "placed [the plaintiff] at greater risk than if he retained the right to bring his FEHA claims in court." (*Id.* at 394.) The reasoning was that under FEHA a prevailing defendant is only entitled to attorneys' fees if it can prove that the case was frivolous. (*See Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97, 115.)

Paragraph 15 was addressed above in the context of shifting the costs of the arbitrator to Plaintiff, but that paragraph goes even further. In providing that the parties are each "responsible for its own costs incurred preparing for and participating in arbitration," the agreement purports to negate FEHA's attorney fee shifting provisions. Indeed, under FEHA (as well as various other statutes under which employment claims are sometimes brought), a prevailing plaintiff is entitled to recover its reasonable attorneys' fees and other recoverable costs as costs incurred prosecuting the action. (Cal. Gov. §12965(b); Cal. Civ. Proc. §1032.)

The agreement here makes no mention of the employee's right to recover fees in an employment action, and in fact suggests to employees considering whether to pursue claims against Fiserv that they would have to bear their own attorneys' fees and costs in doing so regardless of whether they ultimately prevail. There is no provision for the arbitrator to do anything other than force the parties to bear their own fees and costs, a clear violation of California law.

### 8. *Fiserv's Arbitration Agreement is Substantively Unconscionable Because it Does Not Allow for Judicial Review.*

Paragraph 18 of the agreement provides: "The parties agree that the arbitrator's decision will be final and binding upon the parties." This is contrary to *Armendariz*'s requirement that there be a written award for purposes of making judicial review possible. (*Armendariz, supra,* 24 Cal.4th at p. 107.) Indeed, "…granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

rights." (*Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 32.)

Here, the agreement specifically says the arbitrator's award will be final, and therefore does not allow for any judicial review. It does not allow for judgment to be entered or enforced, nor for a party to challenge the award, seek vacatur, or any other judicial review.

### 9.  *Fiserv's Arbitration Agreement is Substantively Unconscionable Based on its Multiple Blank Lines on Material Issues.*

There are five blank lines in the agreement, all in material portions of the contract, rendering the contract critically vague.

In the introductory paragraph, the agreement refers only to Fiserv, Inc. as a party to the agreement. It does not say Fiserv Solutions, LLC. The blank line in the agreement remains blank, and Defendants' declarations confirm that Fiserv Solutions, LLC was not even registered to do business in California at the time of contracting and therefore could not possibly have been listed in the blank as Plaintiff's employer (nor, obviously, could Fiserv unilaterally add the new entity to the agreement after-the-fact). As a threshold matter, arbitration cannot be enforced against defendant Fiserv Solutions, LLC because the purported agreement does not identify that entity as a party to the agreement, nor does it include third party beneficiary language that would bring Fiserv Solutions, LLC into the fold as a party who can enforce the purported agreement.

In paragraph 2, the "Governing Law" of the agreement is left blank.

In paragraph 6, the "Availability of Injunctive Relief" paragraph provides that Fiserv can obtain "injunctive relief to enforce the obligations of (BLANK LINE) or Fiserv policy (No. 411) regarding conflicts of interest and Fiserv policy (No. 411a) regarding confidential information and trade secrets."[1]

In paragraph 16, the "Remedies" provision provides: "The arbitrator shall have the authority to award any remedy or relief that a Federal court or a court of the State

---

[1] Of course, as addressed elsewhere herein, the RSUA agreement separately confirms that Fiserv can pursue employees in Court for damages as well, not just injunctive relief.

of (BLANK LINE) could grant in conformity to applicable law."

In paragraph 17, the "Law Governing Award" provides: "In rendering an award, the arbitrator shall determine the rights and obligations of the parties under this Agreement according to federal law and the substantive law of the State of (BLANK LINE)…"

While it may be tempting to read into the agreement the things necessary to make it enforceable, the Court should not do so for multiple reasons. First, the Court should consider the chilling effect that such blank provisions can have on employees bringing claims. Without knowledge of the provisions that would apply to them, some employees may opt not to pursue claims at all, where they are not represented by counsel or not even know what venue or substantive state law would apply to their case. Second, Fiserv may seek to utilize these blanks to give itself freedom later to choose how it wants to fill them. Fiserv should not be given the benefit of the doubt here, nor should the Court contort to redraft the agreement.

### 10. The Agreement's Unconscionable Terms Cannot Be Severed.

Regarding severability, "[t]the overarching inquiry is whether 'the interests of justice . . . would be furthered' by severance." (*Armendariz*, supra, at p. 124). However, "[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced . . ." *(Id.)*   When more than one clause is deemed unconscionable, "[s]uch multiple defects indicate a systemic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage." *(Id.)* Severance is not appropriate when the "court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms."

Fiserv's arbitration agreement is a clear example of an employer engaging in a systematic effort to impose unfairly one-sided arbitration terms on its employees. If the Court were inclined to grant the motion, it would need at minimum to strike each offending provision laid out herein, including the discovery limitations, cost provision,

attorneys' fee provision, confidentiality provision, "free peak" hurdles to arbitration, and the restriction on judicial review. But even this would not be enough. To truly create a valid arbitration agreement, the Court would have to do a major overhaul of the agreement, as well as other documents (the RSUA for one, which we know demonstrates a lack of mutuality; other documents which Defendants refused to produce to us may do the same). Indeed, the agreement is not mutual in that it does not require Fiserv to arbitrate any claims against its employees. An entire rewrite of the agreement on this point would be necessary. Even further, Court would need to address the multiple material blank spots in the agreement, again rewriting things in a way to make it enforceable.

The Court is not required to, nor should it, undertake such an endeavor. The Court should simply deny the motion.

### D.    The Alleged Delegation Clause Does Not Apply.

While here it is unclear whether Defendants are saying the enforceability of the arbitration agreement has been delegated to the arbitrator, given the dearth of discussion they provide on the issue, we address the issue here for the avoidance of doubt. The general rule is that a court decides the issues of enforceability, not the arbitrator; the *exception* is where it is shown by "clear and unmistakable" evidence that the parties intended to delegate the issue to the arbitrator. (*First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944 (1995).).

 The "clear and unmistakable" test reflects a "heightened standard" of proof. (*Rent-A-Center, West, inc. v. Jackson*  (2010) 561 U.S. 63, fn. 1.)  Courts reason that exactly who would decide unconscionability is not an issue the parties would likely focus upon in contracting, and the default expectancy is that a court would decide the matter. (*First Options, supra,* 514 U.S. at pp. 943-945.) The Supreme Court has decreed, a contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard.  (*Ibid.*)

Here the agreement provides: "The parties further agree that this arbitration

process shall be the exclusive means for resolving all disputes made subject to arbitration, including any issue or dispute concerning the agreement itself." This is exceptionally vague, and does not meet the heightened standard of proof on this issue. For starters, it is not clear what "an issue or dispute" about the agreement actually refers to. Second, the "disputes made subject to arbitration" by the purported agreement are limited to a specific list of claims an employee might bring against an employer. That list does not include the enforceability of arbitration, which creates at best a confusing situation regarding delegation.

Even further, contracts of adhesion granting the arbitrator authority to resolve disputes regarding enforceability of the agreement are themselves unconscionable. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771; *Ontiveros v. DHL Express (USA), Inc.* 164 Cal.App.4th 494, 505-508 (2008); *Murphy v. Check 'N Go of California, Inc.* 156 Cal.App.4th 138, 144-145 (2007)) There can be no dispute that the contract at issue was adhesive. Where Plaintiff had no choice but to sign, it cannot be said that the parties agreed, clearly and unmistakably, to delegate.

Moreover, courts have held that "there is no clear and unmistakable delegation to the arbitrator" to decide arbitrability where the contract includes a clause allowing a court to take certain action. (*See Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209-210.) That is exactly what we have here, where at various times the agreement calls for the Court's potential involvement. For example, in paragraph 14, Confidentiality, it refers to a "judicial, regulatory, or arbitration proceeding" in which the confidentiality provision might not apply. It then provides that given any breach, the non-breaching party could "pursue all available remedies at law."

In *Parada v. Superior Court* (2009), 176 Cal.App.4th 1554, 1566, the court held that "[u]se of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' or 'panel of three (3) arbitrators' suggests the trial court also may find a provision, including the arbitration provision, unenforceable." Likewise, *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893-894 held that the

heightened delegation standard was not met where "one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, [but] another provision indicated that the court might find a provision unenforceable."

For all of these reasons, together or separately, this Court and not an arbitrator should decide fully the question of the agreement's unenforceability.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety. If the Court is inclined to grant the motion and compel arbitration, Plaintiff requests an order staying the case in lieu of an order dismissing it, pursuant to 9 U.S. §3; Cal. Code Civ. Proc. §1281.4.


Dated:  October 6, 2023   JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

Peter A. Javanmardi
Marc A. Holmquist
Miranda A. Mossavar
Attorneys for Plaintiff, SARA AHERN


## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Sara Ahern, certifies that this brief contains 6993 words, which complies with the word limit of L.R. 11-6.1.


Dated:  October 6, 2023        JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

Peter A. Javanmardi
Marc A. Holmquist
Miranda A. Mossavar
Attorneys for Plaintiff, SARA AHERN