Peter A. Javanmardi (State Bar No. 258449)
peter@javanmardilaw.com
Marc A. Holmquist (State Bar No. 258406)
marc@holmquistlaw.com
Miranda A. Mossavar (State Bar No. 279251)
miranda@mossavarlaw.com
JAVANMARDI LAW, PC | HOLMQUIST LAW, PC
1875 Century Park East, Suite 1025
Los Angeles, CA 90067
Telephone:  (424) 286-4240
Facsimile:   (310) 564-0347

Attorneys for Plaintiff SARA AHERN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| SARA AHERN,<br><br>      Plaintiff,<br><br>    v.<br><br>FISERV, INC.; FISERV SOLUTIONS, LLC; and DOES 1 through 10, Inclusive,<br><br>      Defendants. | Case Number: 2:23-cv-07753-WLH (SKx)<br><br>**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION**<br><br>[Filed Concurrently with (i) Further Declaration of Sara Ahern.]<br><br>**Date: Friday, December 8, 2023<br>Time: 1:00 p.m.<br>Courtroom: 9B**<br><br>**Judge: Hon. Wesley L. Hsu**<br><br>**Trial Date: None Set<br>Action Filed: August 16, 2023<br>Action Removed: September 15, 2023** |

TO THE COURT, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, following the initial hearing on this motion, and based on the resulting Court Order, Plaintiff now submits this brief addressing primarily whether this Court or an arbitrator should decide Plaintiff's challenge to the enforceability of the purported arbitration agreement. For all of the reasons stated in the

accompanying brief, there is no clear and unmistakable delegation of arbitrability to an arbitrator, and the Court must decide Plaintiff's unconscionability defense. For the reasons explained in the Opposition, and at times summarized or referenced herein, the Court should also deny Defendants' motion in its entirety.

Dated:  November 10, 2023       JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

_____
Peter A. Javanmardi
Marc A. Holmquist
Miranda A. Mossavar
Attorneys for Plaintiff, SARA AHERN

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................4

II.    STATEMENT OF FACTS...........................................................5

    A.    The Agreement is Adhesive: Plaintiff Was Required to Sign as a Condition of Her Employment.............................................5

    B.    The Agreement Applies the AAA Rules *Only* to "Arbitrations Hereunder," and Not to Gateway Questions of Arbitrability. ........6

    C.    The Agreement Applies the AAA Rules *Only* to the Extent not "Modified Herein"; Paragraph One Purports to Address Delegation and Therefore Modifies any AAA Rule on Delegation. ................6

    D.    Even if the Vague Reference to AAA Rules Was Deemed Sufficient Generally, it is Not Sufficient on These Facts. ...............7

III.    LEGAL ARGUMENT ...............................................................7

    A.    Contract Formation: There is no Mutuality of Obligation, the Agreement Lacks Consideration, and is Therefore Unenforceable. 7

    **B.**    Delegation: There is No Clear and Unmistakable Delegation Because the Agreement Applies the AAA Rules Only to "Any Arbitration Hereunder", Not to Gateway Issues. .............................9

    C.    Delegation: There is No Clear and Unmistakable Delegation Because the Agreement Applies the AAA Rules Only "As Modified Herein", and Paragraph One Provides its Own Insufficient Delegation Clause......................................................11

    D.    Delegation: Even if the Vague Reference to the AAA Rules is Held Generally Sufficient, the Purported Delegation Here Was Not Clear and Unmistakable Based on These Facts and This Plaintiff. ...................................................................................11

    E.    Delegation: The Delegation at Issue is Unconscionable and Therefore Unenforceable. ..............................................................15

        1.    The Delegation Clause is Procedurally Unconscionable Because it is Adhesive, and the Applicable Rules Were Not Provided. .............................................................15

        2.    The Delegation Clause is Substantively Unconscionable Because it (i) Lacks Mutuality; (ii) Alter's FEHA Fee Shifting Provisions; (iii) Requires Illegal Cost Sharing; (iv)

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Does Not Allow for Judicial Review; and (v) Limits
Discovery. ............................................................................16

IV.    CONCLUSION ........................................................................18

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Cases**

*Armendariz v. Foundation Health Psych. Ser.s, Inc.* (2000) 24 Cal.4th 83, 114 ... 12, 14

*Aviles v. Quik Pick Express, LLC* (C.D. Cal. 2015) 2015 WL 9810998, at *6 ............. 9

*Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292 .................................... 10, 11

*Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1225 ................................................ 7, 8

*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244-247 .............................. 13

*Eiess v. USAA Fed. Sav. Bank* (N.D. Cal. 2019) 404 F. Supp. 3d 1240, 1252 ............. 9

*First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944 (1995) ............................ 6

*Galilea, LLC v. AGCS Marine Ins. Co.* (D. Mont. 2016) 2016 WL 1328920, at *3 ..... 9

*Gibson v. Neighborhood Health Clinics, Inc.* (7th Cir. 1997) 121 F3d 1126, 1131 ...... 5

*Holley-Gallegly v. TA Operating, LLC* (9th Cir. 2023) 74 F.4th 997, 1001 ............... 12

*Hong Kong Cont'l Trade Co. Ltd v. Nat. Balance Pet Foods, Inc.* (C.D. Cal. 2023) 2023 WL 2664246, *2 ........................................................................................ 7, 11

*Ingalls v. Spotify USA, Inc.* (N.D. Cal. 2016) 2016 WL 6679561, *4 .................... 9, 11

*Lim v. TForce Logistics, LLC* (9th Cir. 2021) 8 F.4th 992, 1000 .................. 12, 13, 15

*Martinez v. Master Protection Corp.* (2004) 118 Cal. App. 4th 107, 114 ................. 13

*McLellan v. Fitbit, Inc.* (N.D. Cal. 2017) 2017 WL 4551484 ................................... 10

*Meadows v. Dickey's Barbecue Restaurants Inc.* (N.D. Cal. 2015) 144 F.Supp.3d. 1069, 1077 ........................................................................................................... 7, 9

*Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988 ................................................... 7

*Money Mailer, LLC v. Brewer (W.D. Wash. 2016)* 2016 WL 1393492, at *2 .............. 9

*Murrey v. Sup. Ct.* (2023) 87 Cal.App.5th 1223, 1236 ............................................. 16

*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 78-80 .......................... 6, 12

*Rodriguez v. T-Mobile USA, Inc.* (S.D. Cal. 2023) 2023 WL 6593786, at *2 .............. 7

*Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138 .............................. 13

*Saravia v. Dynamex, Inc.* (N.D. Cal. 2015) 310 F.RD. 412, 420 .................... 12, 13, 15

*Shierkatz Rllp v. Square, Inc.* (N.D. Cal. 2015) 2015 WL 9258082, at *6 .................. 7

*Vargas v. Delivery Outsourcing, LLC* (N.D. Cal. 2016 ................................................ 9

3

## I. __INTRODUCTION__

The Court should rule on the question of enforceability of the purported arbitration agreement because the parties did not clearly and unmistakably delegate that question to an arbitrator. The motion to compel should be decided by the Court for the reasons explained herein (and then, ultimately denied for the reasons set forth both herein and in Plaintiff's original Opposition papers).

First, there is no enforceable arbitration agreement, including no agreement regarding delegation, because the obligations are not mutual and there is no consideration. The agreement's scope is defined to include all of Plaintiff's most likely claims against Fiserv, and to exclude all of Fiserv's most likely claims against Plaintiff (and other employees). This lack of mutuality renders both the whole agreement, and the delegation agreement within, unenforceable. The Court's inquiry can end there.

Second, even assuming an agreement exists, there is no clear and unmistakable delegation of arbitrability to an arbitrator because the agreement's plain language is that the AAA Rules apply only to "Any arbitration hereunder," and not to the determination of gateway questions. [1] The ultimate arbitration of Plaintiff's claims (if the agreement is enforceable), is subject to AAA Rules; the agreement does not say that gateway questions are similarly governed by AAA Rules. Cases where courts allow reference to AAA rules to constitute sufficient delegation deal with agreements saying "all disputes" are subject to AAA rules, contrasted with this agreement's limitation of "Any arbitration hereunder." We cannot reach an arbitration "under" this agreement until arbitrability is decided, and there is no part of the agreement that says AAA Rules apply in this regard.

Third, and similarly, there is no clear and unmistakable delegation of arbitrability to an arbitrator because the agreement's plain language also limits the AAA Rules by stating "as modified herein", or as modified by the agreement. Paragraph one of the

---

[1] In its original tentative order, the Court addressed and rejected Defendants' claim that delegation language in paragraph one of the agreement was sufficiently clear and unmistakable. We therefore focus here on the issue of whether the agreement's mere reference to the AAA Rules constitutes a sufficiently clear and unmistakable delegation of arbitrability to an arbitrator.

agreement provides its own delegation language, modifying any purported delegation in the AAA. Thus, only paragraph one could govern as to delegation, and the Court has already indicated its belief that this language is not sufficiently clear and unmistakable.

Fourth, there is no clear and unmistakable delegation of arbitrability because even if the vague reference to AAA Rules is deemed to apply, it is not sufficient in the context of an adhesive contract involving an employee where the plaintiff was not sophisticated in general nor trained in legal matters. While there is a split in Ninth Circuit district courts on this issue, a significant number of cases (what one case calls a "majority" of district court opinions) have held that mere reference to AAA Rules is not sufficient.

Fifth and finally, the delegation clause is also unenforceable because it is unconscionable. If the Court clears the above hurdles, it must evaluate whether the purported delegation agreement is itself invalid based on unconscionability. While the Court must evaluate the delegation agreement as an independent contract separate from the arbitration agreement as a whole, it can and should look to other provisions in the agreement that bear on whether delegation itself is unconscionable. As explained herein, there are many unconscionable provisions relating to delegation, including cost sharing, fee shifting, and lack of judicial review, which dictate a finding that there is no enforceable delegation provision.

As a result, the Court should decide the question of arbitrability and then, for all the reasons stated in the Opposition and reiterated herein, the Court should deny Defendants' motion to compel.

## II.   STATEMENT OF FACTS

### A.   The Agreement is Adhesive: Plaintiff Was Required to Sign as a Condition of Her Employment.

Upon hire, as a condition of employment, Plaintiff was required to sign various documents including one forcing her to arbitrate employment claims against Fiserv (but not the reverse); indeed, a separate Restricted Stock Unit Agreement separately reflected that Fiserv could sue employees in court, not arbitration. (*See, generally*, the

First Declaration of Sara Ahern; *see also*, Further Declaration of Sara Ahern, ¶ 2.) Plaintiff was required to sign the arbitration agreement as a condition of her employment; she could not refuse to sign or negotiate its terms. (Further Ahern Decl., ¶ 2.) No one explained to Plaintiff what arbitration was, the process for arbitration, or the rules that would apply. No one gave her a copy of any rules, nor told her where to find them. Even today, Plaintiff has not been able to find the 2002 AAA rules purportedly applied to the arbitration agreement. (*Ibid*.)

## B. The Agreement Applies the AAA Rules *Only* to "Arbitrations Hereunder," and Not to Gateway Questions of Arbitrability.

In the arbitration agreement, at paragraph seven, it provides: "Any arbitration hereunder shall be conducted under the Model Employment Procedures of the American Arbitration Association ("AAA"), as modified herein." (Emphasis Added.) While the AAA rules are referenced here, they only apply "any arbitration hereunder," not as to threshold issues of who decides arbitrability, interpretation, or enforcement of the agreement.

## C. The Agreement Applies the AAA Rules *Only* to the Extent not "Modified Herein"; Paragraph One Purports to Address Delegation and Therefore Modifies any AAA Rule on Delegation.

The AAA Rules expressly apply only "*as modified herein*." Paragraph one of the agreement purports to delegate certain issues to an arbitrator: "The parties further agree that this arbitration process shall be the exclusive means for resolving all disputes made subject to arbitration, including any issue or dispute concerning the Agreement itself." Thus, paragraph one "modifies" and overtakes any AAA rule regarding delegation of gateway questions. However, this Court's October 26, 2023, tentative ruling stated that the agreement "lacks language that the arbitrator is to determine 'validity or application' of the agreement." (Court's Original Tentative Ruling, October 26, 2023, pp. 6-7.) The language here is instead like other cases holding delegation "language was too broad to indicate a clear and unmistakable intent to delegate [arbitrability]." (*Ibid*.)

**D.** **Even if the Vague Reference to AAA Rules Was Deemed Sufficient Generally, it is Not Sufficient on These Facts.**

Ms. Ahern has no legal training or education. (Further Ahern Decl., ¶ 4.) She has never worked in the legal field in any capacity. Ms. Ahern had no knowledge of what the AAA rules were, or that reference to them was intended to delegate any decisions to an arbitrator. Ms. Ahern was made to sign the agreement as a condition of obtaining her employment with Fiserv. She had no understanding that the agreement's reference to AAA rules meant she would be giving up any more of her rights. Rather, her expectation was that a court could decide legality of a contract. (*Id*. at ¶ 2-5.)

Ms. Ahern had no knowledge of what the AAA rules were, what they said, or how to track them down. But even if she had, she would not likely have understood them. The AAA rules were not attached to the agreement. There was no indication in the agreement of where an employee could find those rules. In 2002, at the time of the purported agreement, the AAA rules were not easily found online as they are today. (*Id*. at ¶ 2-5) Even today, the 2002 AAA Rules are not found on the AAA's website. The Court, in its tentative ruling, could not cite to the 2002 rules because it could not track them down (nor could Fiserv, in its moving papers or reply). A non-lawyer over 20 years ago had little to no chance reasonably to obtain the AAA Rules without her employer providing them to her. And whether or not Ms. Ahern could possibly have found and read the AAA Rules back in 2002, it is undisputed that she did not do so.

## III.   **LEGAL ARGUMENT**

**A.** **Contract Formation: There is no Mutuality of Obligation, the Agreement Lacks Consideration, and is Therefore Unenforceable.**

An arbitration agreement is not enforceable unless both parties are bound thereby; an agreement to arbitrate statutory claims that is worded to obligate only the employee, without equivalent promises by the employer, is unenforceable for lack of consideration. (*Gibson v. Neighborhood Health Clinics, Inc.* (7th Cir. 1997) 121 F3d 1126, 1131.) *Gibson* confirms the most basic of contract rules, that an arbitration

contract requires consideration and an exchange of promises; *Gibson* voided the purported agreement when it found that the employee had promised to arbitrate claims, but the employer made no such promise and had offered no other consideration. In *Gibson*, the employee signed "I agree to the … arbitration provisions set forth in the" handbook, but the handbook disclaimed that it was a contract, stating "[n]othing contained in the [handbook] is intended to create … an express or implied contract."

Here, while both parties signed the agreement, and while it is facially mutual (in its title and description), closer review confirms the promises are anything but mutual. Fiserv carves out for itself the right to bring potential claims it would have against an employee in Court, not arbitration. Where Plaintiff, on the other hand, must bring all of her most likely claims in arbitration. Plaintiff refers the Court to her Opposition papers, which explain in detail the issues with the Agreement's lack of mutuality.

By way of summary, Plaintiff highlights that mutuality in this context must mean that both sides agree to arbitrate all their respective claims against the other. Here, the agreement purports to be mutual, but the scope of the agreement is limited to claims that an employee would bring against the employer. The scope then carves out the claims Fiserv would most likely bring against its employees, including confidentiality, trade secret, and unfair competition claims. (*see* Decl. of Stuz, Ex. A, Doc. 13-3, para. 1.) Even more, the Restricted Stock Unit Agreement (Ex. 1 to the First Decl. of Sara Ahern) also specifically allows Fiserv to sue employees in court: "The Company may institute and prosecute proceedings in any Court of competent jurisdiction either in law or equity to obtain damages for any such breach…You hereby agree to submit to the jurisdiction of any Court of competent jurisdiction in any disputes that arise under this Agreement."[2]

---

[2] Plaintiff has located additional policy documents that likely applied to her but were not produced by Defendants. Fiserv's 2022 Code of Conduct is posted online and mentions court actions and court orders. (Further Ahern Decl., para. 6.) Plaintiff suspects other similar documents that have not been produced to her, including employee handbooks, will have similar language confirming Fiserv has no obligation to arbitrate its own claims against employees.

So, while Defendants were "mutually" agreeing that Plaintiff had to bring her claims in arbitration, there was no reciprocal requirement for Defendants to bring their claims against employees in arbitration. This lack of mutuality alone, in the context of an adhesive contract, justifies denial of the motion. There is no consideration.

Finally, Plaintiff's continued employment cannot serve as consideration, because Fiserv specifically states in the agreement at paragraph 19 that it was not an employment contract: "The parties understand and agree that this Agreement does not constitute a contract of employment, express or implied." As a result, there is a lack of mutual obligation, and lack of consideration from Fiserv, which means there is no enforceable contract in the first place.

**B.** **Delegation: There is No Clear and Unmistakable Delegation Because the Agreement Applies the AAA Rules Only to "Any Arbitration Hereunder", Not to Gateway Issues**.

Assuming an agreement, the next preliminary matter is to determine whether it is for the Court or an arbitrator to decide threshold issues of arbitrability. The general rule is that a court decides; the *exception* is where it is "clear and unmistakable" that the parties intended to delegate the issue to an arbitrator. (*First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944 (1995); *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 78-80.) The "clear and unmistakable" test is a "heightened standard" of proof. (*Rent-A-Center, West, Inc., supra,* 561 U.S. 63, fn. 1.) A contract's silence or ambiguity about the arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard. (*Ibid*.)

With the above backdrop, a review of the agreement's plain language makes clear there is no clear and unmistakable delegation of arbitrability to an arbitrator. Briefly, this Court has already expressed in its tentative ruling that paragraph one is not a sufficiently clear and unmistakable delegation. (*See* the Court's Tentative, and cases cited therein, including *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982, 988; *Meadows v. Dickey's Barbecue Restaurants Inc.* (N.D. Cal. 2015) 144 F.Supp.3d. 1069, 1077.)

What is left is the reference to AAA Rules, which Fiserv argues is alone enough to delegate arbitrability to the arbitrator. But even mere reference to the AAA rules was alone sufficient, the agreement's language here does not get there. The agreement provides: "Any arbitration hereunder shall be conducted under the Model Employment Procedures of the American Arbitration Association ("AAA"), as modified herein." It does not provide that the AAA Rules govern issues of delegation, or of interpretation or enforcement of the agreement. It provides that AAA Rules will govern an "arbitration hereunder."

An arbitration that ultimately may occur based on the agreement is separate from the litigation of the agreement's enforceability, let alone the threshold determination of whether a Court or arbitrator decides enforceability. Fiserv glosses over this language and relies on cases which had held that reference to the AAA Rules can be sufficient for delegation to an arbitrator, but those cases lack the limiting language at issue here.

Indeed, in *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1225, the opinion does not quote the arbitration agreement but it describes it "expressly incorporat[ing] the Rules of [AAA]" without mention of any limiting language. (*Id.* at 1128.) In *Hong Kong Cont'l Trade Co. Ltd v. Nat. Balance Pet Foods, Inc.* (C.D. Cal. 2023) 2023 WL 2664246, *2, the agreement specifically applied the AAA rules to disputes about the agreement itself: "Any dispute arising between the parties out of *or in connection with this Agreement* shall be finally resolved by arbitration …pursuant to the [AAA Rules]." (*Ibid.* [Emphasis added].) In *Shierkatz Rllp v. Square, Inc.* (N.D. Cal. 2015) 2015 WL 9258082, at *6 as well as *Rodriguez v. T-Mobile USA, Inc.* (S.D. Cal. 2023) 2023 WL 6593786, at *2, the agreements called for arbitration under AAA Rules of "all disputes," which the courts held included issues of arbitrability. Here, by contrast, the reference to AAA rules is limited to "arbitrations hereunder," not to "all disputes" and not to the determination of threshold issues.

Defendants easily could have drafted the agreement to state that the AAA rules will govern all disputes between the parties, or even better, that they would specifically

apply in the context of determining arbitrability. They did not. They instead expressly limited the application of the AAA rules to "arbitrations hereunder." This excludes threshold issues, and at worst, renders the agreement unclear and quite mistakable on the issue of delegation to an arbitrator.

**C.** **Delegation: There is No Clear and Unmistakable Delegation Because the Agreement Applies the AAA Rules Only "As Modified Herein", and Paragraph One Provides its Own Insufficient Delegation Clause.**

There is even more limiting language. The agreement says that the AAA rules only apply "as modified herein." The agreement here includes a delegation provision which the Court has already said is insufficient. Thus, if the AAA Rules are held to also provide a delegation provision, paragraph one of this agreement modifies it. The AAA Rules therefore do not even apply as to delegation issues in the first place. Only paragraph one applies, but is insufficient as addressed herein.

**D.** **Delegation: Even if the Vague Reference to the AAA Rules is Held Generally Sufficient, the Purported Delegation Here Was Not Clear and Unmistakable Based on These Facts and This Plaintiff.**

If the Court makes it way past the plain language of the agreement, limiting application of the AAA rules and making clear the AAA rules do not apply to threshold questions, then the Court should still find no delegation here based on an application of the specific facts at issue to the pertinent standard derived from case law.

Defendants rely on *Brennan, supra,* 796 F.3d 1225, which held that incorporation of the AAA rules (without such limitations as exist here) can constitute a clear and unmistakable delegation of arbitrability to the arbitrator. But *Brennan*'s holding was limited to its particular facts. Critically, the plaintiff in *Brennan* was a long-time practicing attorney, most recently an 18-year partner at Jones Day, as well as an otherwise successful businessman and employer. *Brennan* wrote: "[W]e limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'" Further, the court distinguished between that plaintiff

and others without legal backgrounds: "To a large corporation…or a sophisticated attorney…it might be reasonable to conclude that incorporation of the rules clearly and unmistakably evinces an intent to delegate. 'But applies to an inexperienced individual, **untrained in the law**, such a conclusion is likely to be much less reasonable." (*Vargas v. Delivery Outsourcing, LLC* (N.D. Cal. 2016) 2016 WL 946112, quoting *Meadows, supra,* 2015 WL 7015396 [emphasis added].)

Since *Brennan*, district courts in the Ninth Circuit have split on whether mere reference to AAA rules is a sufficient delegation. Many cases have concluded that reference to AAA rules is *not* sufficient where the plaintiff is an "unsophisticated" party untrained in the law. Some cases have held the opposite. *Eiess v. USAA Fed. Sav. Bank* (N.D. Cal. 2019) 404 F. Supp. 3d 1240, 1252 explains the split of authority, noting that the "majority of the lower courts in the Ninth Circuit have 'held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." (*Ibid*, citing *Ingalls v. Spotify USA, Inc.* (N.D. Cal. 2016) 2016 WL 6679561, *4, and referring to the following cases holding mere reference to the AAA rules is alone insufficient:  *Money Mailer, LLC v. Brewer* (W.D. Wash. 2016) 2016 WL 1393492, at *2; *Galilea, LLC v. AGCS Marine Ins. Co.* (D. Mont. 2016) 2016 WL 1328920, at *3, *overruled on other grounds by* 879 F.3d 1052, 1062 (9th Cir. 2018) (holding that district court erred in considering owners of yacht and financial services company to be unsophisticated parties); *Vargas, supra,* 2016 WL 946112, at *8; *Aviles v. Quik Pick Express, LLC* (C.D. Cal. 2015) 2015 WL 9810998, at *6, *vacated on other grounds* by 703 Fed. Appx. 631, 632 (9th Cir. 2017) (noting that question of whether sophistication of parties was relevant to a delegation analysis was open in the circuit); *Meadows, supra,* 144 F. Supp. 3d 1069, 1078.

Plaintiff requests that this Court do as the Court in *Eiess* did and what many other courts have done, and use its discretion to apply the majority holding from the district courts in the Ninth Circuit to find that based on these specific facts that the purported

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

delegation by way of the AAA rules was not sufficient.[3] Plaintiff here was and is not sophisticated nor "trained in the law," such that she should be expected to understand that incorporation of AAA rules constitute an agreement to delegate arbitrability questions to the arbitrator. The rules were also not attached to the agreement and there was no indication of where to find them. And Plaintiff did not "track down" the AAA rules, "examine them, and focus on the particular rule to which" Fiserv now points about delegation. (*See Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292; Further Ahern Decl. paras. 2-5.)

Indeed, the world wide web was not nearly as robust in 2002 as it is today, where an employee can merely google "AAA Employment Rules" and be directed almost immediately to the appropriate AAA website. This issue is perhaps best illustrated by the fact that neither Fiserv nor this Court could obtain a copy of the 2002 AAA Rules even today. The Court, in its tentative, had to piece together from another case (which quoted those rules), and from the AAA rules from a later year, that the 2002 rules likely said the same thing. A non-lawyer in 2002 had little to no chance reasonably to obtain the AAA rules without her employer providing them to her. The cases in which district courts find mere reference to AAA rules is insufficient have very similar facts as here, involving employment/consumer matters, adhesive contracts, unsophisticated plaintiffs, and plaintiffs who did not see or understand the rules in question.

In *Ingalls, supra,* 2016 WL 6679561, *4, the court held incorporation of AAA rules into the agreement did not clearly and unmistakably delegate gateway questions to an arbitrator because the unsophisticated parties "could not be expected to appreciate the significance of incorporation of the AAA rules."

---

[3] The Court's original tentative cited *McLellan v. Fitbit, Inc.* (N.D. Cal. 2017) 2017 WL 4551484. *McLellan* followed *Brennan* irrespective of the parties' sophistication. But *Eiess* came two years later, from the same district court, and noted that the majority of courts in the circuit have gone the other way. *Eiess* and those cases should control here, as they are in fact much better reasoned. The result otherwise would be that employees in adhesive contracts with their employers would be bound by AAA rules not attached to an agreement where they have no idea what those rules say or mean. (*See also, Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292.)

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

In *Meadows, supra,* 144 F.Supp.3d 1069, 1076, mere reference to the AAA rules was not a sufficiently clear delegation where the plaintiffs were unsophisticated parties relative to the employer, Dickey's Barbecue.

By contrast, in *Hong Kong Cont'l, supra,* 2023 WL 2664246, *9, the court held reference to AAA rules was sufficient where both parties were "sophisticated commercial entities." Thus, the court held, "*Brennan* governs." By extension, here *Brennan* must not govern where the plaintiff is not a sophisticated party, and is not trained in the law like Mr. Brennan, Esq.

In *Beco, supra,* 86 Cal.App.5th 292, the California Court of Appeal provides a compelling, persuasive analysis of why a party like Plaintiff here should not be bound by a vague reference to a vague AAA rule regarding the arbitrator's jurisdiction. Indeed, in *Beco* the court rejected the proposition that mere reference to AAA rules is a sufficiently clear and unmistakable delegation. The court distinguished employment matters from the commercial cases on which the defendant there relied, holding that "[i]n the employment context, and especially under the facts here, we find that incorporation by reference does not meet the clear and unmistakable test." The court wrote that reference to the AAA rules does not give employees "much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable, and further that the AAA rules only state the arbitrator has the "power" to determine issues of its own jurisdiction, which "tells the reader almost nothing" since a court also has this power. (*Ibid*.) The *Beco* court also noted that there was no evidence that the parties, in particular the plaintiff Beco, "had any idea what the AAA rules might have meant, much less that he focused on this issue or knowingly agreed to delegate such disputes to an arbitrator." (*Ibid*.) The AAA rules were not attached, nor was there a method for plaintiff to find and read them before he signed.

All of this is equally true here, as is the *Beco* court's holding: "Concluding that [plaintiff] actually considered and consciously agreed to delegate the issue of arbitrability would be a complete fiction…Accordingly we reject the contention that the

arbitration agreement, with or without the AAA rules incorporated, evidenced a 'clear and unmistakable' intent to delegate the validity of the agreement to the arbitrator. It does not." (*Ibid*.) The Court should find under these specific facts that there is no clear and unmistakable delegation of arbitrability questions to an arbitrator.

### E.   Delegation: The Delegation at Issue is Unconscionable and Therefore Unenforceable.

To establish an unconscionability defense under California law, "the party opposing arbitration must demonstrate procedural and substantive unconscionability." (*Holley-Gallegly v. TA Operating, LLC* (9th Cir. 2023) 74 F.4th 997, 1001, quoting *Lim v. TForce Logistics, LLC* (9th Cir. 2021) 8 F.4th 992, 1000; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114; *Saravia v. Dynamex, Inc.* (N.D. Cal. 2015) 310 F.RD. 412, 420.) A challenge to a delegation clause depends on a showing that the delegation itself is unconscionable (as opposed to the agreement as a whole), though this does not preclude review of language or terms outside the delegation language itself provided the party explain how those other provisions make the delegation unconscionable. (*Rent-A-Center, supra,* 561 U.S. 63, 71-4; *Holley-Gallegly, supra,* 74 F.4th at 1001-2.)

Here, there is procedural and substantive unconscionability of the delegation clause itself that warrants the court refusing to enforce it, and therefore the Court deciding the next question of arbitrability itself.

### 1.   The Delegation Clause is Procedurally Unconscionable Because it is Adhesive, and the Applicable Rules Were Not Provided.

Adhesive contracts are procedurally unconscionable. (*Martinez v. Master Protection Corp.* (2004) 118 Cal. App. 4th 107, 114). Here, the arbitration agreement was oppressive because it was adhesive; it was presented to Plaintiff on a "take it or leave it" basis as a condition of employment, and Plaintiff had no meaningful opportunity to negotiate the terms. While the arbitration agreement itself purports to be "voluntary" (*see* Decl. of Stuz, Ex. A, Doc. 13-3, para. 20), it contains no indication

that its terms were negotiable, nor that Plaintiff could keep her job if she refused to agree to arbitrate. And in fact, in Plaintiff's March 19, 2002 offer letter (*see* Decl. of Stuz, Ex. B, Doc. 13-4), Fiserv made clear to Plaintiff: "Your employment is contingent upon completion of all pre-employment processes: … Completed and signed "Mutual Agreement to Arbitrate" form." All of this applies equally to the contract as a whole, and to the purported delegation contract within.

Further, that Plaintiff was not given the AAA rules purportedly dictating delegation of arbitrability questions to an arbitrator weighs heavily in favor of procedurally unconscionability. (*See Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138 [failure to provide rules was oppressive as employee lacked the full import of what she was signing); *see also Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244-247. Further, in *Saravia, supra*, the district court held a delegation provision was procedurally unconscionable given its adhesive nature and where the defendant did not provide the plaintiff with a copy of the AAA rules. (*Saravia, supra,* 310 F.RD. 412, 420; *see also Lim, supra,* 8. F.4th 992.) *Saravia* also found substantive unconscionability based on the agreement requiring the plaintiff to incur arbitral fees *and* to face the possibility of illegal fee shifting. (*Id.* at p. 421.)

With this high level of procedural unconscionability in the purported delegation clause, Plaintiff need not prove as much substantive unconscionability. (*See Armendariz, supra*, 24 Cal. 4th 83 at 114.) But the delegation issue is substantively unconscionable to a high degree as well.

2.      **The Delegation Clause is Substantively Unconscionable Because it (i) Lacks Mutuality; (ii) Alter's FEHA Fee Shifting Provisions; (iii) Requires Illegal Cost Sharing; (iv) Does Not Allow for Judicial Review; and (v) Limits Discovery.**

Plaintiff's Opposition addresses the various, and many ways in which the 2002 arbitration agreement is substantively unconscionable. Many of those things also apply directly to the delegation provision, rendering it unconscionable as well as the

16

arbitration agreement as a whole. The result is that the Court should not enforce the delegation provision (and, as argued in the Opposition, deny the motion entirely).

First, the delegation provision lacks mutuality. As already explained herein in the context of consideration, the agreement lacks mutuality of obligation and this applies equally to delegation. Only Plaintiff would be bound to arbitrate both in general and as to delegation. Defendants carved out for themselves the ability to sue employees in court on all the claims it is most likely to bring against Plaintiff. The agreement's scope specifically excludes Fiserv's claims for confidentiality violations, trade secrets, and unfair competition. The RSUA does the same. The lack of mutuality renders the delegation clause as well as the entire contract unconscionable.

Second, the agreement impermissibly alters FEHA's fee shifting provisions. Fiserv has admitted in its Reply that this is unconscionable. This illegal provision applies equally to delegation, where Plaintiff will be incurring fees related to her FEHA case in the arbitration of the arbitrability question, and those fees need to be recoverable. Again, this provision (explained in more detail in the Opposition), speaks both to the unconscionability of the agreement as a whole, and the purported delegation provision and renders the delegation unenforceable. (*Saravia, supra,* 310 F.RD. 412, 420.)

Third, the agreement requires Plaintiff to share in the cost of arbitration, a clearly unconscionable provision as explained in the Opposition. (*Saravia, supra,* 310 F.RD. 412, 420; *see also Lim v. TForce, supra,* 8 F.4th 992 [holding unconscionable a delegation provision based on "cost-splitting, fee-shifting, and Texas venue provisions"].) This cost splitting provision applies to delegation as well, as it would require Plaintiff to arbitrate the question of arbitrability and to pay for the arbitrator to make that determination. Further, it is not just the actual cost here, but also the chilling effect to most employees that should dictate the Court not upholding this provision.

Fourth, the agreement does not allow for judicial review, which would include judicial review of an arbitrator's finding on the issue of gateway arbitrability. As the Opposition explains, the agreement provides for a written ruling, but that the ruling will

be "final and binding." *Armendariz*'s requirement for written ruling is to allow for appellate review by the superior court. Here, making the arbitrator's ruling "final and binding," including as to the issue of arbitrability, precludes that review.

Fifth, the agreement drastically limits discovery, as explained in the Opposition. This applies to delegation as well, however, because Plaintiff may be entitled to conduct discovery into questions of arbitrability. For example, Plaintiff has sought information from the defense here in litigating the arbitration question, but it has become clear that not everything was produced, including the Fiserv Code located online by Plaintiff. (Further Ahern Decl, para. 6.) Plaintiff's counsel has frequently found that discovery is necessary to fully evaluate questions of arbitrability, and this case appears no different.

As a result of these many illegal provisions, all of which bear on the delegation question, the Court should find that the purported delegation is not enforceable, and should proceed to rule on Plaintiff's unconscionability defense to the entire agreement. For the reasons stated in the Opposition, and at times herein, the Court should then deny the motion to compel in its entirety.

## IV.  **CONCLUSION**

For all the foregoing reasons, and those stated in the original Opposition papers, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety. Private arbitration must not be used as an "instrument of injustice imposed on a take it or leave it basis." (*Murrey v. Sup. Ct.* (2023) 87 Cal.App.5th 1223, 1236.) Injustice would result if the instant agreement were enforced.

Dated:  November 9, 2023          JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

_____
Peter A. Javanmardi
Marc A. Holmquist
Miranda A. Mossavar
Attorneys for Plaintiff, SARA AHERN

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Sara Ahern, certifies that this Opposition further brief contains 5,274 words, which complies with the word limit of L.R. 11-6.1.


Dated:  November 10, 2023        JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

_____
Peter A. Javanmardi
Marc A. Holmquist
Miranda A. Mossavar
Attorneys for Plaintiff, SARA AHERN

**PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**