TERESA R. TRACY (SBN 89609)
teresa.tracy@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendants FISERV, INC.
and FISERV SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| SARA AHERN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FISERV, INC.; FISERV SOLUTIONS, LLC; and DOES 1-10, Inclusive,<br><br>　　　　Defendants. | Case No. 2:23-cv-07753 WLH (SKx)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION**<br><br>[Filed Concurrently with Supplemental Declaration of Eduard Stutz.]<br><br>**Honorable Wesley L. Hsu**<br><br>Date:　December 8, 2023<br>Time:　1:00 p.m.<br>Place:　Courtroom 9B<br>　　　　First Street Courthouse<br>　　　　350 W. 1st Street, 9th Floor<br>　　　　Los Angeles, California 90012 |

51322482.6 11/21/2023

1

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067

## TABLE OF CONTENTS

ARGUMENT……………………………………………………………………………4

I.   THE DELEGATION WAS CLEAR AND UNMISTAKABLE, ESPECIALLY UNDER THE CIRCUMSTANCES. ..................................5

    A.   The Court Need Not Inquire Into Party Sophistication To Find Clear And Unmistakable Delegation By Incorporation Of AAA Rules..................................................................................................5

    B.   Plaintiff Was Not An Unsophisticated Party Incapable Of Understanding The Delegation Clause. .....................................................7

II.  THE DELEGATION CLAUSE IS NOT INVALID AS A MATTER OF CONTRACT LAW. ...................................................................................8

    A.   The Delegation Clause Is Not Procedurally Unconscionable................9

    B.   The Delegation Clause Is Not Substantively Unconscionable. ............10

        i.   The delegation clause is mutual..................................................10

        ii.  The delegation clause is not otherwise unconscionable.............12

III. THE DELEGATION CLAUSE IS NOT AMBIGUOUS. ........................13

CONCLUSION....………………………………………………………………14

CERTIFICATE OF COMPLIANCE……………………………………………15

51322482.6 11/21/2023

2

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bloom v. ACT, Inc.*, No. CV 18-6749-GW, 2018 WL 6163128 (C.D. Cal. Oct. 24 2018) .................................................................................................................. 7

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .................................... 5, 6, 7

*Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. Jan. 5, 2017) .. 7

*Esquer v. Education Management. Corp.*, 292 F. Supp. 3d 1005 (S.D. Cal. 2017) ................................................................................................................................. 6

*Gerlach v. Tickmark, Inc.*, No. 21-cv-2768-YGR, 2021 WL 3191692 (N.D. Cal. Jul. 28, 2021) ............................................................................................................. 7

*Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997) ....... 12

*Hernandez v. United HealthCare Services, Inc.*, No. SA CV 18-04200-DOC, 2018 WL 7458649 (C.D. Cal. Jul. 26, 2018) ................................................................ 7

*Karobkoff v. Nissan Motor Acceptance Co.*, No. 2:21-cv-09570, 2022 WL 2124901 (C.D. Cal. Mar. 22, 2022) .................................................................... 12

*Key v. Optum Servs., Inc.*, No. SACV 19-00813 AG (JDEx), 2019 WL 6736924 (C.D. Cal. Jul. 29, 2019) .......................................................................... 7, 10, 11

*Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ..................................................................................... 7

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772 (2010) .......... 14

*Razzaghi v. UnitedHealth Grp.*, No. SACV 18-01223 AG (JDEx), 2018 WL 7824552 (C.D. Cal. Sept. 17, 2018) ........................................................... 7, 8, 10

*Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) ................................. 11

**STATE CASES**

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231 (2014) .................................... 13

# ARGUMENT

As the Court knows, "[t]he presence of a delegation clause limits the issues that a court may decide." *Caremark LLC v. Chickasaw* Nation, 43 F.4th 1021, 1029 (9th Cir. 2022). If an arbitration agreement "manifests a clear and unmistakable agreement to arbitrate arbitrability," and the delegation clause is not otherwise invalid as a matter of contract law, then the Court refers such disputes to the arbitrator. *E.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In its Tentative Ruling, the Court observed with respect to the parties' Mutual Agreement to Arbitrate Claims (the "Agreement"), that Plaintiff and Fiserv manifested such a "clear and unmistakable" agreement due to the co-occurrence of two dispositive provisions in the Agreement:

- Paragraph 1, which refers disputes "concerning the Agreement itself" to the "arbitration process;" and
- Paragraph 7, which expressly invokes the Rules of the American Arbitration Association ("AAA").

(Doc. 13-3 ¶¶ 1, 7.)

Plaintiff asked for leave to file supplemental briefing regarding her contention that the Agreement's delegation clause does not delegate disputes about arbitrability to the arbitrator—an argument on which she has the burden of proof. The Court generously granted this request. As is evident from her supplemental brief, Plaintiff failed to explicate her position, and instead makes self-serving arguments that her supposed "lack of sophistication" prevented her from understanding that, by executing the Agreement, she had delegated arbitrability to an arbitrator. She also re-launched her defenses of mutuality and conscionability, which are issues the Court has already determined are not relevant to its ruling.

Nothing Plaintiff argues supports a different outcome from the Tentative Ruling, which the Court should enter as final.[1]

---

[1] Given the limited scope of this supplemental briefing, Fiserv is not addressing the merits of the Court's position on the Agreement's clear and unmistakable delegation

51322482.6 11/21/2023

4

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

## I. THE DELEGATION WAS CLEAR AND UNMISTAKABLE, ESPECIALLY UNDER THE CIRCUMSTANCES.

In its Tentative Ruling, the Court determined the parties unmistakably and clearly delegated arbitrability to the arbitrator by virtue of the Agreement's incorporation of the AAA Rules. Plaintiff argues that the delegation clause and the Agreement's reference to the AAA Rules is meaningless because Plaintiff lacked sophistication and legal training such that she could understand that disputes regarding the Agreement would not be decided in court. This argument goes nowhere because (1) the Court does not inquire into party sophistication to find clear and unmistakable delegation by incorporation of the AAA Rules, and (2) even if the Court did inquire into sophistication, it would find that Plaintiff is quite sophisticated.

### A. The Court Need Not Inquire Into Party Sophistication To Find Clear And Unmistakable Delegation By Incorporation Of AAA Rules.

Plaintiff asserts that *Brennan*, which held that incorporation of AAA Rules in an arbitration agreement indicates clear and unmistakable intent to delegate arbitrability to an arbitrator, does not apply here because Plaintiff is unsophisticated, and the party in *Brennan* was sophisticated. As an initial note, Plaintiff is correct that the *Brennan* court did "limit [its] holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties." 796 F.3d at 1131 (quotations omitted). However, it also "d[id] not foreclose the possibility that this rule could also apply to unsophisticated parties" and admonished that its decision "should not be interpreted to require that the contracting parties be sophisticated." *Id.* at 1130; *see also Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1012–13 (S.D. Cal. 2017) (collecting cases and concluding that "*Brennan* does not compel a court to

---

of the issue of arbitrability in its Tentative Ruling. Fiserv expressly reserves the right to challenge this, and any other part, of the Tentative Ruling in the future if necessary.

inquire into a party's sophistication to find clear and unmistakable intent").

Courts in this District have sided with "the greater weight of authority" that "unsophisticated parties can agree to contracts that include terms showing a "clear and unmistakable" intent to delegate arbitrability issues to an arbitrator." *Razzaghi v. UnitedHealth Grp.*, No. SACV 18-01223 AG (JDEx), 2018 WL 7824552, at *2 (C.D. Cal. Sept. 17, 2018); *see also, e.g.*, *Gerlach v. Tickmark, Inc.*, No. 21-cv-2768-YGR, 2021 WL 3191692, at *4 (N.D. Cal. Jul. 28, 2021) (observing "the greater weight of authority" holds that incorporating rules is enough to delegate); *Key v. Optum Servs., Inc.*, No. SACV 19-00813 AG (JDEx), 2019 WL 6736924, at *2 (C.D. Cal. Jul. 29, 2019) (rejecting argument that there is no delegation of arbitrability when party is unsophisticated even when AAA Rules are incorporated in arbitration agreement); *Hernandez v. United HealthCare Servs., Inc.*, No. SA CV 18-04200-DOC (KESx), 2018 WL 7458649, at *5 (C.D. Cal. Jul. 26, 2018) ("This Court is unwilling to create an exception to the [*Brennan*] holding for unsophisticated parties, because the factors that might make someone "sophisticated" are poorly suited to a standard definition upon which parties can rely to avoid uncertainty or surprise in the meaning of the instrument they signed."); *Bloom v. ACT, Inc.*, No. CV 18-6749-GW (SSx), 2018 WL 6163128, at *4 (C.D. Cal. Oct. 24 2018) (collecting cases) (finding clear and unmistakable delegation without inquiry into sophistication where agreement expressly incorporated AAA Rules and observing "[t]he general trend since [*Brennan*] is to allow arbitrability delegation vis-à-vis the incorporation of AAA rules, regardless of the parties' sophistication"); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991–92 (N.D. Cal. Jan. 5, 2017) (observing that trend and clear weight of authority support conclusion that sophistication of parties is irrelevant where AAA Rules are incorporated); *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (observing trend to not consider sophistication of parties and concluding that incorporation of AAA Rules, together with clear delegation clause, show intent to delegate arbitrability).

51322482.6 11/21/2023

6

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

Because of this Circuit's clear stance that it does not inquire into parties' sophistication when AAA Rules have been incorporated into an agreement to arbitrate, the inquiry into sophistication, if any, better belongs in a conscionability analysis, if anywhere. *See, e.g.*, *Razzaghi*, 2018 WL 7824552, at *2. (*See infra* Part II(a).) Thus, the Tentative Ruling correctly decided the issue of delegation based on the Agreement's incorporation of AAA Rules.

### B. Plaintiff Was Not An Unsophisticated Party Incapable Of Understanding The Delegation Clause.

Even if the Court chooses to consider the argument advanced by Plaintiff, Plaintiff's assertions that she had no legal training and was unsophisticated are unreasonable and do not compel a change to the Tentative Ruling. *See Razzaghi*, 2018 WL 7824552, at *2 (observing plaintiff's argument that "he was only 'an applicant for a position as a process improvement specialist' and 'not a high-level executive or attorney'" was unhelpful to determining his level of sophistication). Plaintiff's self-serving claims that she "was and is not sophisticated" (Doc. 26 at 15) are unconvincing for numerous reasons:

1. In 2002, Fiserv hired Plaintiff as a Vice President, Conversions Manager. Her starting salary was $70,000 which, if inflation is taken into account, would be well over $115,000 in today's dollars. (Stutz Supp. Dec. ¶ 4(a), Exh. A.) Prior to joining Fiserv, Plaintiff had 25 years of experience in the banking industry, including as a Chief Financial Officer and a Director of Operations. (*Id.* ¶ 4(b), Exh. B at 2.) *See Razzaghi*, 2018 WL 7824552, at *2 (noting that six-figure income "somewhat cuts against [plaintiff]'s argument that he was 'unsophisticated'").

2. Plaintiff was extremely familiar with use of the internet in 2002. (*Contra* Doc. 26-1 ¶ 3.) In fact, the foundation of her day-to-day work *since the date of hire* was the internet; she worked remotely from her home full-time starting April 15, 2002. (Stutz Supp. Dec. ¶ 3(d), Exh. D; Doc. 16-1 ¶ 4 (self-identifying as "a remote employee for the entirety of my employment").) In January 2003, she reported a

working knowledge of email and Fiserv's website. (Stutz Supp. Dec. ¶ 4(b), Exh. B at 2.)

3. Plaintiff's 2002 performance evaluation credits her for being a "[g]ood creative thinker" who had "[g]ood problem solving skills," [e]xcellent initiative," an ability to "offer alternatives to any situation," and to "[m]ake intelligent decisions based on the facts that are presented." (*Id.* ¶ 4(c), Exh. C at 3.) Plaintiff's 2002 evaluation alone belies her assertion that in 2002 she would have been unable to search the internet or ask Fiserv if she wished to find more information about arbitration generally, the Agreement, or about the AAA Rules. (*See* Doc. 26-1 ¶¶ 2–3.)

4. In her initial Declaration in opposition to Fiserv's motion to compel, Plaintiff did not state that in 2002, she "did not know what arbitration was." (*See* Doc. 16-1.) This averment was added only after initial oral argument on this motion, during which Fiserv's counsel noted that Plaintiff has not averred total misapprehension of arbitration. (*See* Doc. 26-1 ¶ 4.)

All told, should the Court even consider Plaintiff's lack-of-sophistication argument, the evidence upends her urged conclusion. In April 2002, Plaintiff was an experienced and management-level professional in a sophisticated industry who regularly used the internet to perform her work and who had the resourcefulness and initiative to seek information when needed. Both of Plaintiff's Declarations lack any representation that Plaintiff sought or wished to seek further information about the Agreement before signing it. Her attempt to argue this choice should be rejected.

## II. THE DELEGATION CLAUSE IS NOT INVALID AS A MATTER OF CONTRACT LAW.

Plaintiff next argues that the delegation clause cannot be enforced for reasons of procedural and substantive unconscionability. In support, she re-hashes her argument that the Agreement, as a whole, allegedly lacks mutuality, alters statutory fee-shifting arrangements, requires unpermitted cost-sharing, does not allow for

51322482.6 11/21/2023

8

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

judicial review, and limits discovery. As discussed below, Plaintiff's arguments are beyond the scope of this round of briefing, are repetitive of issues previously briefed and nonresponsive to Fiserv's previously briefed rebuttals, and are unconvincing.

### A. The Delegation Clause Is Not Procedurally Unconscionable.

Plaintiff argues that the delegation clause is procedurally unconscionable because Fiserv asked for Plaintiff's signature to the Agreement "as a condition of employment, and Plaintiff had no meaningful opportunity to negotiate the terms." (Doc. 26 at 15–16.) At most, there is a low degree of procedural unconscionability, which—in tandem with the lack of substantive unconscionability described below—comes nowhere close to unenforceability for the following reasons:

1. The fact that Fiserv presented the Agreement to Plaintiff as a condition of employment is not the outrageous act that Plaintiff suggests. Instead, it "reveals, at most, a 'low degree' of procedural unconscionability." *Razzaghi*, 2018 WL 7824552, at *2.

2. Plaintiff had ample time to review the very short and well-organized Agreement and to consider whether she wished to sign it. She signed it on March 5, 2002—forty-one days, or **almost six weeks**, before her first day of employment on April 15, 2002. (Doc. 13-3 at 4.) She does not provide any allegation that she was required to sign the Agreement so far in advance of the start of employment, that Fiserv refused to answer questions or gave misleading answers to questions about the Agreement (in fact, she does not state that she asked or tried to ask any questions at all). (*See* Docs. 16-1, 26-1.) *See Key*, 2019 WL 6736924, at *3 (declining to find procedural unconscionability and observing that **two weeks** was "plenty of time" to review agreement before signing); *Razzaghi*, 2018 WL 7824552, at *2 (declining to find procedural unconscionability where plaintiff signed arbitration agreement "which [wa]sn't overly complicated," after having "had plenty of time to review" it, and noting that plaintiff did not have questions about agreement). Further, this is not a situation in which an employer sprung an arbitration agreement on an employee as

51322482.6 11/21/2023

9

DEFENDANTS' RESPONSE TO PLAINTIFF'S FURTHER BRIEFING IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY THE PROCEEDINGS AND COMPEL ARBITRATION

a condition of continued employment. If Plaintiff, an at-will employee, did not find the Agreement palatable, she could have opted not to work for Fiserv.

3. There is no unconscionability in the form the Agreement was presented to Plaintiff. The Agreement is not even four pages, is written in plain English in a legible font, is organized by clear subheadings, and was presented to an educated native English speaker. *Compare Key*, 2019 WL 6736924, at *3 (declining to find procedural unconscionability where a native speaker had two weeks to review arbitration policy that "is only six pages, is divided into clearly labeled headings and subheadings, and isn't "overly complicated"), *with Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015) (finding procedural unconscionability where non-English reader was required to immediately sign agreement that included delegation clause "buried in the middle" of it "in small font" inside of larger contractor agreement).

4. The Agreement unequivocally contemplates the possibility of modifying its terms before or after execution. Paragraph 3 ("Term and Modification") plainly provides that the parties may modify the Agreement's terms or revoke it in whole. (Doc. 13-3 ¶ 3.) This is directly contrary to Plaintiff's argument that "the arbitration agreement . . . contains no indication that its terms were negotiable." (Doc. 26 at 15–16.)

For the reasons set forth above, even if she was given the benefit of the doubt, based on the evidence presented in this record, Plaintiff cannot demonstrate that she is unsophisticated at such a level to demonstrate procedural unconscionability.

**B.  The Delegation Clause Is Not Substantively Unconscionable.**

   *i.  The delegation clause is mutual.*

Plaintiff revisits her assertion that the Agreement lacks mutuality and, therefore, the delegation clause is unenforceable. (Doc. 26 at 7–9.)[2] This assertion is

---

[2] Plaintiff's re-hashing of arguments she raised previously go beyond the relief the Court granted in allowing her supplemental briefing. (Doc. 25.) Fiserv should be

unpersuasive for several reasons:

1.  Fiserv has already rebutted this assertion. (Doc. 18 at 8–10.) Plaintiff did not engage with Fiserv's well-reasoned rebuttal, which could have clarified the issue. Instead, Plaintiff simply restates the same inaccurate argument. The Agreement is mutual.

2.  Plaintiff does not confine the scope of her argument to the delegation clause; rather, she resurrects her faulty argument that the *entire* Agreement is non-mutual and, therefore, unenforceable.[3] An argument that the entire agreement is non-mutual is insufficient to support a challenge to the mutuality of the delegation clause, specifically. *E.g.*, *Karobkoff v. Nissan Motor Acceptance Co.*, No. 2:21-cv-09570, 2022 WL 2124901, at *4 (C.D. Cal. Mar. 22, 2022) (rejecting plaintiff's challenge to mutuality of delegation clause where plaintiff argued that arbitration agreement generally lacked mutuality and offered no argument on mutuality of delegation clause specifically).

At the end of the day, the delegation clause is mutual. It states as follows:

> *The parties* further agree that this arbitration process shall be the exclusive means for resolving all disputes made subject to arbitration, including *any* issue or dispute concerning the Agreement itself.

(Doc. 13-3 ¶ 1 (emphasis added).) The Agreement does not provide that it applies

---

awarded its costs, including reasonable attorney's fees, in having to address arguments that the Court has already considered and rejected.

[3] Plaintiff's sole citation is to the foreign decision *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997) to support her theory that the alleged lack of mutuality in the Agreement amounts to lack of consideration. The case does not treat the issue of mutuality, but rather, describes a scenario in which an employer attempted to enforce a promise in a handbook to arbitrate claims, where the handbook later disclaims that it is an enforceable contract. The facts in *Gibson* do not resemble those here whatsoever.

only to Plaintiff's disputes or Plaintiff's issues concerning the Agreement. It applies equally to Fiserv and Plaintiff. *See, e.g.*, *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 247 (2014) (concluding delegation clause did not lack mutuality because both parties were "bound by it equally").

Plaintiff provides no helpful authority to support her position that an arbitration agreement that carves out certain claims for each side results in a delegation clause lacking mutuality because no such rule exists.

ii. *The delegation clause is not otherwise unconscionable.*

Plaintiff resuscitates further conscionability arguments from her earlier opposition brief (including challenges to alleged alterations of statutory fee-shifting arrangements, unpermitted cost-sharing, judicial review, and limits on discovery).[4] This is outside of the scope of the Court's analysis of the delegation clause. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 73–74, 130 S. Ct. 2772, 2779–80 (2010) (declining to reach arguments about unconscionability, including those regarding

---

[4] Plaintiff makes a non-committal, short argument that she is entitled to discovery on the issue of arbitrability due to the existence of a Fiserv employee code of conduct found on the internet. (Doc. 26 at 18; Doc. 26-1 ¶ 6, Exh. 2.) First, counsel argues that "Plaintiff has sought information from the defense here in litigating the arbitration question, but it has become clear that not everything was produced, including the Fiserv Code." (Doc. 26 at 1.) Plaintiff sought her personnel file from Fiserv. ***Fiserv produced it in full as required by California law and has repeatedly told counsel that it had produced her personnel file***. Furthermore, the Fiserv Code of Conduct is not a personnel record. The Court is also well aware that discovery in this matter has not begun; Plaintiff's accusations of incomplete productions are unfair, inaccurate, and untrue. Second, Plaintiff expresses befuddlement that the Fiserv Code does not mention arbitration. (Doc. 26-1 ¶ 6.) The Fiserv Code is a Code of Conduct (*i.e.*, the guidelines for ethical behavior and how to comport oneself while at work)—it does not hold itself to be a legally binding document or deal with the litigation of an employee's or Fiserv's claims. (*See* Doc. 26-1 Exh. 2.) In fact, the document specifically explains: "Our Code is not a contract. It does not convey any specific employment rights or guarantee employment for any specific period of time." (*Id.* at 15.)

discovery limitations and fee-splitting arrangements, where plaintiff failed to make sufficient argument regarding the delegation clause as opposed to agreement as a whole). Further, Plaintiff nowhere responded to or engaged with Fiserv's rebuttals to these fully-briefed arguments.

Neither the Agreement generally nor the specific provision at issue in this briefing—the delegation clause—is unenforceable for procedural or substantive unconscionability.

## III. THE DELEGATION CLAUSE IS NOT AMBIGUOUS.

Plaintiff argues that Paragraph 7 of the Agreement requires judicial determination of arbitrability because the following language is allegedly ambiguous: "Any arbitration hereunder shall be conducted under the Model Employment Procedures of the American Arbitration Association ("AAA"), as modified herein." (Doc. 13-3 ¶ 7.) Plaintiff distorts this language to insist that (1) the AAA Rules are meant to apply only to "arbitrations," which, according to Plaintiff, comprise only substantive disputes and not procedural disputes like arbitrability (Doc. 26 at 9–11); and (2) the application of AAA rules is qualified such that it does not apply to disputes regarding arbitrability. (*Id.* at 11.) Again, Plaintiff is wrong for the following reasons:

1. Plaintiff's argument, at root, is that the term "arbitration" is ambiguous. (Doc. 26 at 13 ("[Fiserv] expressly limited the application of the AAA rules to 'arbitrations hereunder.' This excludes threshold issues, and at worst, renders the agreement unclear and quite mistakable on the issue of delegation to an arbitrator.").) An arbitration is a dispute settled by an arbitrator; there is no other reasonable meaning. The issue of arbitrability is one such dispute. Paragraph One then delegates "all disputes made subject to arbitration" to "th[e] arbitration process." (Doc. 13-3 ¶ 1.) The only possible meaning is that the delegation clause requires all disputes subject to the agreement—including those "concerning the Agreement itself"—to be arbitrated.

2. Plaintiff asserts—in six short lines—that the "as modified herein" clause in Paragraph 7 negates the impact of the Agreement's incorporation of the AAA Rules. Plaintiff provides no explanation why this would be the case. The "as modified herein" language simply provides that, to the extent any provision of the Agreement purports to modify the AAA Rules, the modified Rules apply.

Plaintiff's argument does not square with the plain reading of Paragraph 7. Paragraph 7 does not alter the default rule that the delegation clause applies.

## CONCLUSION

For the foregoing reasons, and for those set forth in its opening and reply briefs, Fiserv respectfully requests that the Court grant its Motion and enter an Order compelling arbitration of Plaintiff's claims and dismissing her case, or, alternatively, staying the proceedings, and order such other and further relief as the Court determines.

DATED: November 21, 2023                SAUL EWING LLP

By: _____
TERESA R. TRACY
Attorneys for Defendants FISERV, INC.
and FISERV SOLUTIONS, LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fiserv, Inc. and Fiserv Solutions, LLC, certifies that this brief contains 3,403 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 21, 2023       SAUL EWING LLP

By: _____
TERESA R. TRACY
Attorneys for Defendants FISERV, INC.
and FISERV SOLUTIONS, LLC